633 S.E.2d 272

**Pamela K. HAYHURST, fka Pamela K. Shepard, Plaintiff Below, Appellee**

v.

**Robert O. SHEPARD, Defendant Below, Appellant.**

No. 32902.

Supreme Court of Appeals of West Virginia.

Submitted June 6, 2006.

Decided June 16, 2006.

Judith A. Isner, Esq., Harrisville, Steven A. Jones, Ritchie County Prosecuting Attorney, Harrisville, for Appellee.

John M. Butler, Esq., St. Marys, for Appellant.

STARCHER, J.:

In this appeal from the Family Court of Ritchie County, we are asked to review an appeal by a parent who—in a separate proceeding in the circuit court—has been indicted for failing to pay child support. In the order being appealed, the family court refused to retroactively modify and eliminate a substantial portion of the parent's unpaid child support obligation, and refused to retroactively give the parent credit against that unpaid obligation for premiums for health insurance that covered his children.

As set forth below, we affirm the family court's order.

## I.

### Facts & Background

The parties, appellant Robert Shepard and appellee Pamela Hayhurst, were once married. Two daughters were born of the marriage, one in 1985 and the other in 1987. On March 13, 1990, an order was entered granting the parties a divorce, and the parties agreed that the appellee would have custody of the parties' daughters.

In 1994, appellant Shepard moved to modify certain visitation terms of the court's 1990 order. As part of that modification proceeding, the parties agreed that the appellant would provide health insurance coverage for the benefit of the parties' daughters. In an order dated May 20, 1994, the court adopted the parties' agreement relating to visitation, and ordered the appellant to provide health insurance coverage for his two daughters.

It appears that in mid–1998, the parties' older daughter moved in with the appellant; the parties' younger daughter stayed with the appellee. A modification proceeding was initiated, and on March 11, 1999, the court entered an order canceling the child support obligations of both parties. However, while neither party was required to pay support to the other, the court's order continued to require the appellant to provide health insurance for the children.

At some point thereafter, the older daughter returned to live with the appellee, and the parties filed a joint motion for modification asking that the appellee once again have legal custody of both children. As part of the joint motion, the parties stated that "beginning September 1, 1999" the appellant had agreed to pay $200.00 per month as child support for both children. When the child support obligation of the older child terminated, the appellant agreed that he would pay the appellee $150.00 per month in support.

On March 27, 2000, the court entered an order incorporating the parties' agreement. The order established that, beginning on September 1, 1999, the appellant had an obligation to pay the appellee $200.00 a month in child support for both daughters. When the obligation terminated for the older daughter,

the appellant was ordered to pay $150.00 a month for the support and maintenance of the younger daughter until that support obligation terminated.

The parties agree that the March 27, 2000 order makes no mention of health insurance for the parties' daughters. However, the parties also agree that the appellant continued to provide health insurance coverage for the children.[1]

At some point in May 2001, the parties' older daughter returned to the home of the appellant; the parties' younger daughter continued to reside with the appellee.[2] The appellant did not file any motions with the family court to modify the child support obligation imposed by the March 27, 2000 court order. Instead, we discern from the record that the appellant did not make any further child support payments to the appellee.

Approximately twenty-five months later, in June 2003, the parties' older daughter once again moved back to live with the appellee. The record indicates that the appellant continued to not pay any child support to the appellee. Accordingly, on November 10, 2003, a felony warrant was issued charging the appellant with failing to provide support to a minor, pursuant to *W.Va.Code*, 61–5–29(2) [1999]. The appellant was indicted in January 2004 for the offense.[3]

1. The record indicates that the appellant has remarried, has another child with his current wife, and that the appellant's wife purchased health insurance for all of the appellant's children through her place of employment.

2. The record is not developed on this point, but it appears that the appellee was criminally charged with committing domestic violence against the daughter, and that the daughter moved in with the appellant as a condition of the appellee's bond. It further appears that the domestic violence charges were later dropped.

3. In a contemporaneous proceeding, *State ex rel. Shepard v. Holland*, 219 W.Va. 310, 633 S.E.2d 255 (No. 32903, 2006), the appellant seeks to prevent his prosecution under this indictment. The appellant was charged under *W.Va.Code*, 61–5–29(2) [1999], which states:
    A person who persistently fails to provide support which he or she can reasonably provide and which he or she knows he or she has a duty to provide to a minor by virtue of a court or administrative order and the failure results in: (a) An arrearage of not less

*W.Va.Code*, 61–5–29(2) makes it a felony for a person who has a duty to provide child support to accrue an arrearage of $8,000.00 or more, or for that person to fail to pay child support for a period of twelve consecutive months. According to records maintained by the Bureau of Child Support Enforcement, by November 2003 the appellant had a combined arrearage of $9,819.57 and had failed to pay child support for at least twenty-eight consecutive months.[4]

On February 18, 2004, the appellant initiated an indirect attack on the indictment by filing a motion with the family court seeking to compel the Bureau of Child Support Enforcement to recalculate and reduce the alleged arrearage. The appellant made two arguments in support of the motion. First, the appellant argued that from May 2001 until June 2003 he had no obligation to pay child support to the appellee because the parties were in a "split custody" arrangement similar to that which existed in 1999. The court's May 1999 order stated that neither party would pay support to the other when each party had custody of one of the parties' daughters. The appellant therefore argued that he could disregard the court's March 2000 order and rely upon the court's May 1999 order. Second, the appellant argued that because he had continued to pur-

than eight thousand dollars; or (b) twelve consecutive months without payment of support, is guilty of a felony and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars, or imprisoned for not less than one year nor more than three years, or both fined and imprisoned.

4. According to records provided by the Bureau of Child Support Enforcement, the appellant's "combined arrearage" by November 30, 2003, consisted of $8,477.64 in unpaid child support, and $1,341.93 in interest. By February 9, 2004, the combined arrearage had grown to $10,387.27.

Additionally, the records indicate that the appellant failed—as he was required to do by the court's March 27, 2000 order—to pay support from September 1999 until May 2000; failed to pay in July 2000 and again in November 2000; failed to make a payment in May 2001; and made his last payment in June 2001. No further payments were made from July 2001 through February 9, 2004.

chase health insurance for his daughters, even though he was not ordered to do so in the March 2000 order, he should receive a credit for the health insurance premiums against the child support due.

On January 27, 2005, the family court entered an order partially granting the appellant's motion. The family court made a finding that "there is no factual dispute that the [appellant] is in arrears in his child support obligation, the only issue in dispute is the amount of the arrears." Turning to the appellant's legal arguments, the family court concluded that the appellant could not receive a credit for the payment of health insurance premiums against any child support obligation he had. Furthermore, the family court concluded that the appellant was obliged to follow the court's most recent order issued in March 2000. The family court reasoned that the March 27, 2000 order required the appellant to pay the appellee $200.00 a month in support when she had custody of two children, but pay her only $150.00 a month when she had custody of one child. Because the March 27, 2000 order was clear on its face and was never modified, the family court concluded it took precedence over any interpretation or agreement(s) made by the parties.

The family court therefore ordered the Bureau of Child Support Enforcement to recalculate the appellant's arrearage with the appellant's obligation set at $150.00 per month, rather than $200.00 per month, "for the months of June 2001 through May 2003."

The appellant appealed to the circuit court. In a thorough, detailed order dated April 22, 2005, the circuit court affirmed the family court's order.

The appellant now appeals the circuit court's order that affirmed the decision of the family court.

5. *W.Va.Code,* 48–13–503 [2001] states:
In cases with split physical custody, the court shall use Worksheet A as set forth in section [48–]13–403 to calculate a separate child support order for each parent based on the number of children in that parent's custo-

## II.

### Standard of Review

■■■ Our standard of review was established by the Court in the Syllabus to *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004):

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

## III.

### Discussion

The appellant argues that the family court erred on two points.

■■ The appellant's first argument is that the family court erred in finding that the appellant had a duty, pursuant to the court's March 2000 order, to pay the appellee $150.00 per month in support between May 2001 and June 2003. The appellant argues that because a split physical custody arrangement existed between the parties, the family court had an obligation to recalculate the appellant's child support obligation in accordance with the statutory formula for split physical custody situations.[5]

The appellee responds, however, by pointing out that the appellant agreed to the terms of the court's March 2000 order, and knew that the order required the payment of child support "until such time as the obligation shall terminate by law." The appellee takes the position that the appellant had every right to file a motion with the family court to modify his child support obligation, but that he failed to do so at his own peril. The appellee contends that the appellant essentially asked the family court to retroac-

dy. Instead of transferring the calculated orders between parents, the two orders are offset. The difference of the two orders is the child support order to be paid by the parent with the higher sole-parenting order.

tively modify his child support obligation, and the family court properly refused to do so. We agree.

*W.Va.Code*, 48–11–105 [2001] states that a family court may only modify a child support obligation "when a motion is made that alleges a change in the circumstances of a parent" and when the family court finds "there is a substantial change in [the] circumstances" of the parties.[6] We have generally interpreted *W.Va.Code*, 48–11–105 to require the filing of a motion for modification before a child support obligation may be modified. *See Rules of Practice and Procedure for Family Courts*, Rule 23 ("Except for good cause shown, orders granting relief in the form of spousal support or child support shall make such relief retroactive to the date of service of the motion of relief.").

█ In Syllabus Point 2 of *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987), we made clear that "[t]he authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support installments." Put simply, a court "lacks the power to alter or cancel accrued installments for child support." Syllabus Point 2, *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980) (*per curiam*). *In accord*, Syllabus Point 4, *Robinson v. McKinney*, 189 W.Va. 459, 432 S.E.2d 543 (1993). *See also*, Syllabus Point 1, *Goff v. Goff, supra* ("Matured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as 'decretal judgments' against the party charged with the payments."). As when circuit courts had jurisdiction over support orders in domestic relations cases, the same rules are now applicable to family court support orders.

We therefore conclude that the family court did not err in finding that the appellant had an obligation to either comply with the court's March 2000 order, or file a motion to modify that order. The appellant could not simply disregard the order.

█ Likewise, we find no error in the family court's interpretation of the order. The parties agreed in March 2000 to an order requiring the appellant to pay $200.00 a month to the appellee when she had custody of both children, and $150.00 per month when the obligation for the oldest daughter terminated. We find the March 2000 order could be fairly read to permit the appellant to reduce his obligation to $150.00 per month, and affirm the family court's order on this point.

█ The appellant's second argument is that he should have received a credit against his child support obligation for health insurance premiums paid for the benefit of his children. The appellant relies upon *W.Va. Code*, 48–12–103 [2001], which states that "[t]he cost of insurance coverage shall be considered by the court in applying the child support guidelines[.]" The appellant contends that this statute mandates that health insurance premiums paid by a parent for a child must be deducted, dollar for dollar, from the parent's child support obligation. The appellant further contends that he should receive credit for "at least one-half" of the premiums paid on behalf of his daughters against his child support obligation.

The appellee responds that the appellant had every opportunity to make his argument in March 2000, but did not. When the appellant completed a worksheet to calculate his child support obligation in March 2000, the

6. *W.Va.Code*, 48–11–105 [2001] states, in pertinent part:

(a) The court may modify a child support order, for the benefit of the child, when a motion is made that alleges a change in the circumstances of a parent or another proper person or persons. A motion for modification of a child support order may be brought by a custodial parent or any other lawful custodian or guardian of the child, by a parent or other person obligated to pay child support for the child or by the bureau for child support enforcement of the department of health and human resources of this state.

(b) The provisions of the order may be modified if there is a substantial change in circumstances. If application of the guideline would result in a new order that is more than fifteen percent different, then the circumstances are considered a substantial change.

worksheet did not mention any insurance payments paid by the appellant. Instead, the appellant agreed to the calculations that omitted any consideration of health insurance premiums. As with the appellant's first argument, the appellee argues that the appellant should not receive retroactive relief.

After a careful review of the parties' arguments and the pertinent statutes, we reject the appellant's argument. First, we find that the appellant did not promptly and in good faith seek approval from the family court to receive any credit for insurance premiums. The appellant and his counsel were present each time child support was calculated, dating back to 1994 when the appellant first agreed to purchase health insurance, and had ample opportunity to raise the issue of credit for the insurance premiums, yet failed to do so. Rather than seek a court resolution of this legal question, the appellant simply refused to pay the court-ordered child support amount. The appellant did not seek to modify the child support order until after he was indicted—and, even after he was indicted for failing to pay support, he still refused to pay the child support amount ordered by the family court.

Furthermore, we find the appellant's argument that *W.Va.Code,* 48–12–103 is the controlling statute to be somewhat misleading. While *W.Va.Code,* 48–12–103 requires that the cost of insurance coverage "be considered" in the application of the child support guidelines, the statute does not say *how* the cost of insurance is to be considered. Instead, the treatment of child health insurance expenses is discussed in *W.Va.Code,* 48–13–602 [2001], a statute not raised by the appellant. Contrary to the appellant's argument, the statute makes clear that an obligor's child support obligation is not reduced dollar-for-dollar by the payment of insurance premiums. Instead, those insurance premiums are *added* to the total support obligation owed by both parties. The total support obligation is then—with the premiums included—divided between the parties in proportion to their adjusted gross incomes. Only then is the premium amount paid by the obligor deducted from the obligor's share of the total support obligation, and then only "if the support obligor is actually paying the premium."[7]

We find that the *Guidelines for Child Support Awards,* specifically *W.Va.Code,* 48–13–602, sets out a clear system whereby a parent may receive some credit for purchasing health insurance for his or her children. We further find that the appellant totally failed to even attempt to avail himself of this system.[8] We therefore find no error in the family court's order.

7. Regarding the consideration of health insurance premiums for children, the *Guidelines for Child Support Awards, W.Va.Code,* 48–13–602(b) and (c) [2001], state:

(b) The payment of a premium to provide health insurance coverage on behalf of the children subject to the [child support] order is added to the basic child support obligation and divided between the parents in proportion to their adjusted gross income. The amount added to the basic child support obligation is the actual amount of the total insurance premium that is attributable to the number of children due support. If this amount is not available or cannot be verified, the total cost of the premium should be divided by the total number of persons covered by the policy. The cost per person derived from this calculation is multiplied by the number of children who are the subject of the order and who are covered under the policy.

(c) After the total child support obligation is calculated and divided between the parents in proportion to their adjusted gross income, the amount of the health insurance premium added to the basic child support obligation is deducted from the support obligor's share of the total child support obligation if the support obligor is actually paying the premium.

8. The appellee raises two factual points in her brief as further reasons for why the appellant is not entitled to credit for insurance premiums paid. First, she argues that the appellant did not pay health insurance premiums for his daughters, but rather the appellant's new wife paid for the insurance through her employer. Further, the appellee argues that the appellant has another child with his new wife, and that there was no additional cost to the appellant's wife to add his two daughters to the policy.

We concede that *W.Va.Code,* 48–13–602(c) permits a child support obligor to receive some credit for health insurance premiums, but only "if the support obligor is actually paying the premium." However, because of the quality of the record in this case, for purposes of this appeal we have not considered the appellee's factual assertions. In other words, we have presumed that the appellant incurred some out-of-pocket cost to himself in order to insure his

## IV.

### Conclusion

The family court's order of January 13, 2005 is affirmed.

Affirmed.

daughters, and that he was "actually paying the premium."